UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY NERONI, an Individual, and
ALLISON NERONI, an Individual,

        Plaintiffs,

v.

BANK OF AMERICA, N.A., successor by merger
to BAC HOME LOANS SERVICING L.P. f/k/a
COUNTRYWIDE HOME LOANS SERVICING,
L.P., and SUZANNE MALI, Deputy Sheriff in and
for the County of Macomb,

        Defendants.
_____/

Case No. 13-11823
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 17, 2013

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant Bank of America, N.A.'s Motion to Dismiss [dkt 8][1] Counts I-VII of Plaintiff's Amended Complaint [dkt 7].  The motion has been fully briefed.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without oral argument.  For the following reasons, Defendant's motion is GRANTED.

---

[1] Defendant Bank of America, N.A. has another Motion to Dismiss [dkt 3] pending before the Court.  Bank of America, N.A. filed the instant motion after Plaintiff filed an Amended Complaint [dkt 7].  It is therefore unnecessary for the Court to address the merits of Bank of America, N.A.'s original Motion to Dismiss.

## II. BACKGROUND

A. FACTUAL BACKGROUND

This case deals with foreclosure proceedings. In their *pro se* Amended Complaint, Randy Neroni and Allison Neroni (the "Plaintiffs") claim Defendant Bank of America, N.A. (the "Defendant") failed to properly communicate with Plaintiffs while improperly foreclosing on their home. On October 15, 2008, Plaintiffs obtained a loan in the amount of $98,718.00 (the "Loan") from Taylor, Bean & Whitaker Mortgage Corporation (the "Original Lender") that was secured by a mortgage (the "Mortgage") on real property located at 13091 Picadilly Drive, Sterling Heights, Michigan 48312 (the "Home"). Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as the mortgagee solely as the Original Lender's nominee.

On September 26, 2011, the Mortgage was assigned from MERS to Defendant, and was duly recorded on September 30, 2011, in the Macomb County Deed Registry. Due to a scrivener's error in the address, the assignment was corrected on June 1, 2012 and the corrected assignment to Defendant was recorded on August 15, 2012 in the Macomb County Deed Registry. Plaintiffs defaulted on the Loan and Defendant pursued foreclosure by advertisement. On November 2, 2012, Defendant purchased the Home at a sheriff's sale.

Between May 2011 and August 2012, Plaintiffs wrote four letters to Defendant regarding the Mortgage on their Home:

(1) On May 8, 2011, Plaintiff Randy Neroni wrote Defendant a letter ("May 8 Letter") demanding "certified copies of any and all wet inked signed documents including but not limited to any alleged promissory notes, alleged Mortgages, alleged Notes, [and] alleged Deed[s] of Trust" with regards to Plaintiff's Mortgage. Plaintiffs received no response.
(2) On August 16, 2011, Plaintiff Randy Neroni wrote Defendant a letter ("August 16 Letter") demanding "a certified copy of the original contract with both parties wet inked signatures and that the obligation is to Bank of America or Bank of America will deliver to Randy Neroni a pay off letter or it's equivalent acknowledging that Randy Neroni has no obligation to Bank of America[.]" On September 1, 2011,

   Defendant provided Plaintiffs with a copy of the note they entered into on October 15, 2008, with the Original Lender.
 (3) Plaintiff Randy Neroni wrote a letter to Defendant on an unspecified date ("Undated Letter") demanding that Defendant "forward to me . . . the owner of my mortgage note and their contact information[.]"  Plaintiffs received no response.
 (4) On August 8, 2012, Plaintiff Randy Neroni wrote a fourth letter to Defendant ("August 8 Letter") requesting that Defendant deliver an apology letter for allegedly trespassing at Plaintiffs' home.  Defendant did not respond, but asserts it was trying to provide Plaintiffs with notice of foreclosure of their Home under the Michigan foreclosure by advertisement statute.

The content and intent of these letters are the main source of contention in this case.

**B. PROCEDURAL BACKGROUND**

Plaintiffs filed their Amended Complaint on June 14, 2013.  In their Amended Complaint,[2] Plaintiffs allege claims against Defendant for infringement of the Real Estate Settlement Procedures Act ("RESPA") (Counts I–IV), common law fraud (Count V), common law silent fraud (Count VI), and common law breach of contract (Count VII).  On June 28, 2013, Defendant filed the instant motion.

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims.  The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor.  *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992).  While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions.  *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).  A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*,

---

[2] Plaintiffs' Amended Complaint includes a common law negligence claim against Defendant Suzanne Mali.  As the instant motion seeks dismissal of claims against Defendant, that claim is not addressed.

3

550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct."  *Id.* at 556.  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice."  2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

Defendant asserts that Plaintiffs' RESPA claims should be dismissed because (1) Defendant had no legal obligation under RESPA to respond or, alternatively, (2) Plaintiffs failed to plead any actual damages related to their RESPA claims.  Defendant further asserts that Plaintiffs have failed to adequately plead claims for fraud or breach of contract relating to Defendant's legal standing to foreclose on Plaintiffs' Home.  For the following reasons, the Court agrees.

### A.  PLAINTIFFS' RESPA CLAIMS

Defendant asserts that the Court should dismiss Plaintiffs' claims under RESPA because Defendant was under no legal obligation to respond to any of the letters identified by Plaintiffs. Specifically, Defendant argues that the letters it received from Plaintiff Randy Neroni were not "Qualified Written Requests" ("QWR") as defined in RESPA, but were instead requests for information—such as loan origination documentation—that it was not legally required to provide under RESPA.  Plaintiffs claim that these letters, in seeking verification of Defendant's authority to collect payment on behalf of another, were QWR and thus required a response under RESPA.

RESPA defines QWR as "written correspondence" that include "a statement of the reasons for belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Once QWR are received a servicer must respond within 20 business days acknowledging receipt, and must within 60 business days provide the borrower with either a statement of why the account is correct, the actual information requested by the borrower or the reasons that such information is unavailable. *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 897 (E.D. Mich. 2011).[3]

Not all requests for "other information" qualify as a QWR under RESPA; rather, only those requests that are related to servicing activities covered by RESPA as defined in 12 U.S.C. § 2605(i)(3) legally require a response. *See Drew*, 802 F. Supp. 2d at 897–98. 12 U.S.C. § 2605(i)(3) defines "servicing" as "receiving any scheduled periodic payment from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."

Using this standard, the Court finds that each of Plaintiffs' letters fail to meet the statutory definition of QWR, and thus cannot be the basis for a viable claim under RESPA. All four of Plaintiffs' letters are attempting to ascertain documentation—be it promissory notes, mortgages, deeds or otherwise—concerning the Original Loan. A loan servicer, however, would not be involved with the process of initially issuing a loan; instead, loan servicers deal solely with the task of managing the loan once it's issued. Such is the case here: there is no connection between the commencement of Plaintiffs' Loan and Defendant's role as servicer of that Loan. As such, Plaintiffs' requests for information concerning the origin of their Loan, the validity of

---

[3] The time limits with regards to acknowledging and responding to QWR have changed since the filing of the instant motion. The law now states that a loan servicer must respond within five business days and provide the requested information within 30 days. 12 U.S.C. § 2605(e)(1–2)(A–C).

their Loan, or the identity of the owner of the Mortgage are not related to the loan servicing provided by Defendant or addressed under RESPA.

Plaintiffs argue in their response brief that these letters should be considered QWR because the information sought all related to whether Defendant was actually the servicer of their Loan. Yet, nowhere in Plaintiffs' May 8 letter to Defendant—demanding certified copies of any promissory notes, mortgages, Notes, or Deeds of Trust Defendant had—do Plaintiffs mention anything to do with loan servicing. Further, on August 2, 2011, Defendant provided Plaintiffs with notice that Defendant was the servicer of Plaintiffs' Loan. The Court refuses to accept Plaintiffs' assertion that their second, third, and fourth letters—all purportedly mailed after receiving notice from Defendant that it was Plaintiffs' Loan servicer—were seeking additional verification of information Plaintiff had already received.

Finally, even if the Court were to construe Plaintiffs' letters as QWR, Plaintiffs' RESPA claims have failed to plead any specified damages as required by RESPA. To sufficiently plead actual damages under RESPA, Plaintiffs must state a "causal link between Defendant's allegedly inadequate response . . . and any actual damages suffered[.]" *Mekani v. Homecomings Financial*, *LLC*, 752 F. Supp. 2d 785, 795–796 (E.D. Mich. 2010). In this case, none of Plaintiffs' four RESPA claims mention any damage caused by Defendant's alleged failure to respond. Instead, Plaintiffs' Amended Complaint requests statutory damages in the amount of $1,000.00 for "each RESPA violation," totaling $3,000.00. Not only does this fail to provide any information as to how Defendant's alleged RESPA violations damaged Plaintiffs, but it also seems to suggest that only three of Plaintiffs' four RESPA counts warrant relief.

The Court finds that Counts I-IV of Plaintiffs' Amended Complaint do not provide the factual allegations necessary for the Court to find Defendant liable of any RESPA violations.

**B. PLAINTIFFS' FRAUD AND SILENT FRAUD CLAIMS**

Plaintiffs assert Defendant is guilty of both fraud and silent fraud, claiming that Defendant illegally enforced Plaintiffs' note and failed to disclose information to Plaintiffs that Defendant knew would cause Plaintiffs to be misled. Defendant alleges, however, that it had a right to foreclose on Plaintiffs' Home because Plaintiffs were in default on their Mortgage, and that Defendant's actions were neither a misrepresentation nor a suppression of the truth.

**i. FRAUD**

Under Michigan law, to state a claim for fraud, a plaintiff must allege particular facts establishing "(1) [t]hat defendant made a material misrepresentation; (2) that it was false; (3) . . . [defendant] knew it was false . . . ; (4) [defendant] made it with the intention that it should be acted upon by Plaintiffs; (5) that Plaintiffs acted in reliance upon it; and (6) that [Plaintiffs] thereby suffered injury." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (internal quotations omitted).

Plaintiffs' fraud claim is based on alleged misrepresentations made by Defendant that Defendant had the authority to foreclose upon Plaintiffs' Home. Plaintiffs assert that only the note holder is entitled to enforce a note, and, because Defendant is not the holder of Plaintiffs' note, the foreclosure perpetrated by Defendant was a violation of law. Michigan law, however, clearly allows the "servicing agent of the mortgage" to foreclose a mortgage. Mich. Comp. Laws § 600.3204(1)(d). Further, Defendant was assigned Plaintiffs' Mortgage in September of 2011. As either the holder of Plaintiffs' Mortgage or as their Loan servicer, the Court finds that Defendant had the authority to foreclose upon Plaintiffs' Home.

### ii. SILENT FRAUD

Silent fraud, or fraudulent concealment, requires a plaintiff to plead "that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure." *Lucas v. Awaad*, 299 Mich. App. 345, 363–364 (2013) (citation omitted). Further, a claim of silent fraud must prove an alleged misrepresentation "occurs when a party suppresses part of the truth when asked, not by mere nondisclosure." *See Buntea v. State Farm Mut. Ins. Co.*, 467 F. Supp. 2d 740, 746 (E.D. Mich. 2006) (citations omitted).

Plaintiffs claim Defendant's, by failing to inform Plaintiffs whether it had their note, denied Plaintiffs critical facts and caused them to suffer undisclosed damages. The Court has already established that, as Plaintiffs' requests were not QWR, Defendant had no legal duty to disclose the information requested. It is further uncontested that the information sought by Plaintiffs—possession of their note—is a matter of public record. Lastly, Plaintiffs' reliance upon Article 3 of the UCC and Mich. Comp. Laws § 440.3501 to require some sort of presentment by Defendant is in error, as neither apply to mortgages. *See Schare v. Mortgage Electronic Registration Systems, Inc.*, No. 11-11889 2012 WL 2031958 at *2 (E.D. Mich. June 6, 2012).

For the reasons stated above, the Court finds that Counts V and VI of Plaintiffs' Amended Complaint do not provide the factual allegations necessary for the Court to find Defendant liable of fraud or silent fraud.

### C.  PLAINTIFFS' BREACH OF CONTRACT CLAIM

Plaintiffs claim Defendant breached an alleged contract between the two parties by initiating foreclosure proceedings. Plaintiffs assert that the May 8 Letter they sent to Defendant became a legally binding contract when Defendant failed to provide Plaintiffs with a certified

copy of their "original wet ink signed note" within 30 days of receiving Plaintiff's May 8 Letter. Plaintiffs also claim that Defendant gave up any and all interest it had in Plaintiffs' Home by not responding to their May 8 Letter. Defendant asserts that the May 8 Letter was not a valid contract because it lacks consideration and fails to represent a meeting of the minds between the parties.

"To state a breach of contract claim under Michigan law, a plaintiff must first establish the elements of a valid contract." *Johnson v. Trott & Trott, P.C.*, 829 F. Supp. 2d 564, 573 (W.D. Mich. 2011) (citing *In re Brown*, 342 F. 3d 620, 628 (6th Cir. 2003)). To establish a valid contract, a plaintiff must show "parties competent to contract, proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Bolone v. Wells Fargo Home Mortgage, Inc.*, 858 F. Supp. 2d 825, 832 (E.D. Mich. 2012) (citations omitted). Consideration requires "that there be a bargained-for exchange between the parties." *Calhoun Cnty v. Blue Cross Blue Shield Mich.*, 297 Mich. App. 1, 13–14 (2012) (citation omitted). Mutuality of agreement requires an offer and an acceptance where there is a "mutual assent or a meeting of the minds on all essential terms." *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 452–53 (2006). Finally, under Michigan law "[t]he party seeking to enforce a contract has the burden of showing that [the contract] exists." *Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 417 (6th Cir. 2011).

Plaintiffs' May 8 Letter fails to meet the standard required for creating a valid contract under Michigan law. First, nothing presented to the Court suggests that Plaintiffs and Defendant ever had a meeting of the minds on any term in Plaintiffs' May 8 Letter. There is no indication that Defendant ever intended to be bound by Plaintiffs' May 8 Letter. In fact, there is nothing in the record to suggest Defendant even received it. Additionally, the Court finds that Plaintiffs'

May 8 Letter lacks consideration, as it is void of any bargained-for exchange between the parties. Finally, the Court finds Plaintiffs' assertion that their prior course of dealings with Defendant indicates Defendant accepted their May 8 Letter through silence is a blanket assertion lacking any basis in fact upon which the Court could reasonably rely.

Thus, the Court finds that Count VII of Plaintiffs' Amended Complaint does not provide the factual allegations necessary for the Court to find Defendant liable of breach of contract.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [dkt 8] Counts I-VII of Plaintiffs' Complaint is GRANTED.

IT IS SO ORDERED.

Date:   October 17, 2013                         s/Lawrence P. Zatkoff
                                                 HON. LAWRENCE P. ZATKOFF
                                                 U.S. DISTRICT JUDGE